

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

P. Michael Cunningham
Assistant United States Attorney
michael.cunningham@usdoj.gov

Suite 400:
36 S. Charles Street, 4th Floor
Baltimore, MD 21201

Direct: 410-209-4884
Main: 410-209-4800
Fax: 410-962-3091

February 26, 2020

Via email:
David_Walsh-Little@fd.org

David Walsh-Little, Esquire
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland  21201

    Re:    *United States v. Phillip Cline, Jr.*
           Criminal No. _____

Dear Mr. Walsh-Little:

      This letter, together with the Sealed Supplement, constitutes the plea agreement (this "Agreement") that has been offered to your client, Phillip Cline, Jr. (hereinafter "Defendant"), by the United States Department of Justice, as represented by both the United States Attorney's Office for the District of Maryland and the Civil Rights Division, Criminal Section and (collectively, "the Government"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by March 6, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

    1.    The Defendant agrees to waive indictment and venue, and plead guilty to a Criminal Information charging him with Interstate Threatening Communication, in violation of 18 U.S.C. § 875(c). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Information, in the Districts of Indiana, Maryland and New Jersey:

        a.    First, that the defendant threatened to kidnap or to injure [BR], as charged in the Information;

b. Second, that the threat was transmitted in interstate (or foreign) commerce; and

c. Third, that the defendant transmitted the threat knowingly and intentionally.

### Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 2 | 18 U.S.C. § 875(c) | NA | 5 yrs | 3 yrs | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes the Government to obtain a credit report in order to evaluate the Defendant's ability to

pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by the Government.

## Waiver of Rights

4.   The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.   The Defendant knowingly waives the right to have the charges presented to a Grand Jury for indictment. He also expressly waives the right to challenge venue for this offense, and agrees to have the charge adjudicated in the District of Maryland.

   b.   If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

   c.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   d.   If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   e.   The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   f.   If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial, except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. *Specifically, the Defendant will be giving up the right to possess firearms unless that right is restored to him at some time in the future. The Defendant specifically acknowledges that he cannot actually or constructively possess the weapons seized from his residence on or about December 13, 2019, should those firearms be returned to a third party of his designation.* The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. The Government and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a. The Government and the Defendant further agree that the applicable base offense level is 12, pursuant to United States Sentencing Guidelines ("USSG") § 2A6.1(a)(1).

b. Pursuant to USSG § 2A6.1(b)(6), there is a four (4) level decrease because subsections (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, and the offense involved a single instance evidencing little or no deliberation.

c. The Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. The Government may oppose any adjustment for acceptance of responsibility

under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, the Government, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    d.    The adjusted offense level is six (6).

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

9. At the time of sentencing, the Government agrees to make a recommendation for "a term of incarceration within the applicable guideline range." The Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The Government and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the Government or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

10. The Government also expressly agrees that it will not charge the Defendant for any offenses now known to the government, specifically, violations of 18 U.S.C. § 922(g), for the unlawful possession of firearms. The Government agrees to return to a suitable third party the hunting weapons, including a shotgun and long rifle, seized during a search of the Defendant's residence on or about December 13, 2019.

### Waiver of Appeal

11. In exchange for the concessions made by the Government and the Defendant in this Agreement, the Government and the Defendant waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground

that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and the Government knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

12. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the Government, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

13. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the Government will be free from its obligations under this Agreement; (ii) the Government may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, the Government will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the Government is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

### Court Not a Party

14. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing

findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between the Government and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
P. Michael Cunningham
Assistant United States Attorney

Eric S. Dreiband
Assistant Attorney General
    Civil Rights Division

By: _____
Anita Channapati
Trial Attorney
Civil Rights Division | Criminal Section
U.S. Department of Justice

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3/16/2020
Date

_____
Phillip Cline, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

04/06/2020
Date

_____
David Walsh-Little, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Phillip CLINE, Jr. ("CLINE"), age 38, currently resides in Elkton, Cecil County, Maryland.

On or about February 1, 2019, B.R., an employee of Coastal Credit LLC, an auto loan business, contacted the defendant about what was suspected by Coastal Credit to be a delinquent auto loan. The defendant had, in fact, previously purchased a vehicle that was financed by a loan from Coastal Credit. During one of the many phone calls placed either by or too the Defendant, Coastal Credit associated a phone number, which turned out to be CLINE's business mobile phone number, with his account.

The entire Coastal Credit February 1, 2019 call to CLINE was recorded. From the outset of B.R.'s call to the Defendant, it was very apparent that he was upset with the caller, and unwilling to provide information verifying his identity. Below is an unofficial transcript of the phone call:

| | |
|---|---|
| PC [Cline]: | What? what? |
| BR: | Hi I'm looking for Phillip Cline.... |
| PC: | Why are you calling my phone? Huh? |
| BR: | Is this Phillip Cline? |
| PC: | Yeah. Who's this? |
| BR: | This is uh, B[xxxxxx] calling with Coastal Credit on a recorded line |
| PC: | Okay why are you... |
| BR: | How you doing Mr. Cline? |
| PC: | How did you get this number? |
| BR: | Is this Phillip Cline? You have uh, this is Costal Credit. |
| PC: | Yeah but why do you...okay I know who it is. Why are you calling this number? How did you get this number? |
| BR: | Okay. |
| PC: | Okay. |
| BR: | So I need to verify... |
| PC: | How did you get this number? |
| BR: | I need to verify a few things with you and then I'll explain the reason for my call, okay? |
| PC: | Okay. I know why you're calling. You want me tell you what? |
| BR: | Can you, can you give me the last four of your social? |
| PC: | No I can't. How'd you get this number? That's my question to you. |
| BR: | If this is Phillip Cline, then you should already know how we got this number. |

PC: Um, this is a personal work number. This is my business number. So, I'm asking you how you got it. I didn't give you this number

BR: Okay well I can't disclose any, any information if you don't wanna verify yourself.

PC: Okay but you're fucking calling me, bitch, you can disclose anything about me. I don't know who the fuck you think you are.

BR: Mister Cline...

PC: Mister Cline nothing. What's your problem? What you call me for?

BR: Okay. Verify the last four of your social.

PC: Um. I ain't verifying shit. I don't have the Cadillac. I done talked to your company a thousand and one fucking times...

BR: Uh-huh.

PC: ...that I traded the car in and car is being paid off...

BR: Okay.

PC: ...on the first by.

BR: What dealership?

PC: Where I got the car.

BR: Where did you get the, where, what dealership?

PC: (UI) Motors. You're a fucking nigger. Don't fuckin' call my phone you fucking black nigger bitch. You fucking, all my fuckin' white power friends 'll fuckin' hang your ass. Don't call me again mother fucker. I told you this is a personal number. Do not call it or I will get you for harassment. There is a number on file that you are to call, you don't call this one nigger. Alright?

SO STIPULATED:

*[signature]*
P. Michael Cunningham
Assistant United States Attorney
Anita Channapati, Trial Attorney
Department of Justice, Civil Rights Division

*[signature]*
Phillip Cline, Jr.
Defendant

*[signature]*
David Walsh-Little, Esquire
Counsel for Defendant